## 5741. WALKER v. LOTT-LEWIS COMPANY.

1. A surety on a stay bond is estopped to assert that, because the stay bond was not given within the time prescribed by law, he should be discharged from his obligation as surety.

2. A contract of suretyship on a stay bond imposes upon the surety the single, simple and unqualified obligation of paying the amount of the judgment which has been rendered against his principal, in the event that his principal does not pay it within the prescribed time. Since the purpose of the stay bond is to relieve the debtor and free his property, the surety upon a stay bond can not claim a release from his obligation because of any lack of diligence on the part of the judgment creditor in not enforcing the fi. fa., and consequently an affidavit of illegality which sets up that the surety on a stay bond was discharged, because the plaintiff in fi. fa., by dismissing a levy upon certain property of his principal, increased his risk as a surety upon the stay bond, is no obstacle to a levy of the fi. fa. issued against the surety in conformity with law upon the breach of the stay bond.

DECIDED FEBRUARY 6, 1915.

Affidavit of illegality; from city court of Baxley—D. M. Parker, judge pro hac vice. February 13, 1914.

*S. D. Dell,* for plaintiff in error. *Padgett & Watson,* contra.

RUSSELL, C. J. On February 12, 1913, a judgment was rendered by default in the city court of Baxley in favor of Lott-Lewis Company against Graham Mercantile Company and others. An execution was issued upon the judgment, and on March 6, 1913, was levied upon certain property of the defendants in fi. fa. On March 11, 1913, the defendants undertook to stay the execution for sixty days as provided by law, and H. A. Walker (the plaintiff in error), with others, under the provisions of section 6044 of the Civil Code, signed a bond for that purpose. On May 15, 1913, the attorneys for the plaintiff in fi. fa. caused the execution to be cancelled of record, and on the same day a new execution was issued against the parties named in the original execution and the sureties on the stay bond. On September 13, 1913, the new execution was levied upon certain property of the plaintiff in error. To this levy an affidavit of illegality was interposed, alleging that the stay bond upon which the execution was based was illegal, because it undertook to stay a judgment upon which an execution had already issued, which had been levied; because there was no entry on the original execution to show that a sale was not had under the levy entered thereon; because the plaintiff had cancelled the original judgment of record, and, the same being so cancelled, no legal ex-

ecution could issue as against the plaintiff in error as a bondsman, and no legal levy could be made thereunder; and because the city court of Baxley, from which the execution issued, had been adjourned more than four days at the time of the filing of the stay bond, and hence the stay bond upon which the execution against the plaintiff in error was issued was illegal. The affidavit of illegality was properly traversed, and when the same came on for trial the plaintiff in error moved to amend the affidavit of illegality, by alleging that the levy of the original execution and the seizure of certain property thereunder prior to the giving of the stay bond, which property was of more value than the amount of the execution, and the release of that levy by direction of the plaintiff after the giving of the stay bond, tended to increase the liability of the surety on the bond, and that the original levy and the entry thereof remaining on the fi. fa. unexplained amounted to a discharge of the surety pro tanto. This amendment was disallowed by the court, and exceptions pendente lite were taken. The case, upon its issues of fact as well as of law, was submitted for trial to the court without the intervention of a jury. The court found in favor of the plaintiff in execution, and ordered the execution to proceed.

We find no error in this judgment. The decision turns upon the solution of two questions which control all the issues raised: (1) Can a surety who has voluntarily signed a stay bond take advantage of the fact that the bond was not executed within the time provided by law, or of any other failure to comply with the provisions of section 6044 of the Civil Code, of which he had notice at the time he executed the obligation by means of which his principal's property was released from the processes in favor of the plaintiff in execution? (2) Can a surety upon a stay bond claim a release from his obligation because of any lack of diligence on the part of the judgment creditor in not enforcing his execution after the execution of the stay bond, or can he claim a release pro tanto in case the judgment creditor, after the execution of the stay bond, dismisses the levy of his execution upon the property of the defendant in fi. fa., who is principal in the stay bond?

1. Section 6044 of the Civil Code provides that "In all cases in the superior court where a verdict or judgment shall be rendered, the party against whom the same may be may, either in open

court or in the clerk's office, within four days after the adjournment thereof, enter into bond, with good and sufficient security, for the payment of such verdict or judgment and costs, within sixty days." The contention of the plaintiff in error, as embodied in one of the grounds of his affidavit of illegality, in which he insists that he should be discharged from liability, is that the stay bond was void because it was not given within four days after the adjournment of the city court of Baxley, and because it was given after the prescribed time for staying execution had expired. It appears, from the evidence, that the court should have convened on the first Monday in February, 1913, and that upon that day the judge of the court was unable to attend, on account of sickness, and that the clerk, acting under direction from the judge, and presumably under the provisions of section 4343 of the code, adjourned the court until the second Monday in February, at which time the court was held by his honor Judge Krauss. Section 12 of the act creating the city court of Baxley provides that "the judge shall have the power to hold the court in session from day to day for a period not longer than four weeks from the beginning of each term" (Acts 1897, p. 423) ; and it is insisted that as the stay bond was not given until the 11th of March, it was not given during the term, nor within the four days after adjournment which are allowed by law. It seems to us that the only purpose of the General Assembly in the act creating the city court of Baxley, in enacting this provision, was to limit all terms of the court to four weeks from the actual beginning of the term, no matter whether it begins on the date fixed by the act, or at a later date, fixed by an order of adjournment, which may defer the session in accordance with law. Consequently it perhaps might be held that as the actual session of the court in the present instance began on February 10, 1913, and the bond was given on March 11, 1913, and the court was not automatically adjourned until March 10, 1913, the defendant in fi. fa. could have given a stay bond on March 11 or at any time prior to March 14. It is not necessary, however, that we rule upon this point, and we therefore do not at this time decide that the city court of Baxley must remain open for a period of four weeks consecutively, or may sit for a period of four weeks during the term, even though a part of the term may be held later than four weeks from the beginning of the term.

Treating the stay bond as having been given more than four days after the adjournment of the court, and conceding, for argument's sake, that the February term, 1913, of the city court of Baxley was held for a longer period than by law permitted, we still hold, unequivocally, that the plaintiff in error is estopped to assert that he should be discharged from his obligation as a surety upon the ground that the stay bond was not given within the time prescribed by law. We have been unable to find in the form of precise adjudication any lamp of authority by which our feet might be guided. But a consideration of the nature of the obligation into which the surety on a stay bond enters, and of the inevitable results which follow the execution of a stay bond "with good and sufficient security," satisfies us that it would be unconscionable to permit one who, for the very purpose of staying the processes of the law, assumes the obligation to pay the judgment debt of another, and thus paralyzes the progress of the law's processes, to set up, as an excuse for the failure to perform his solemn obligation, facts which in no wise affect the sanctity of his undertaking. The surety in the present case was legally bound to know all the facts in regard to the February term of the city court of Baxley upon which he now relies; and it follows that he is now estopped to assert these facts as a defense. The stay bond given in this case is not subject to any conditions. After reciting that the defendants have paid the cost and that they demand stay of execution for sixty days, the bond recites: "And the defendant and the undersigned securities acknowledge themselves jointly and severally bound unto the said plaintiff for the amount of said judgment, as to both principal and interest, in the terms of the law in such cases made and provided." When a defendant files a stay bond with good and sufficient security the law stays its processes for sixty days, regardless of the wishes or convenience of the judgment creditor. This being a provision for the benefit of the principal in the stay bond (a provision of relief of which he is powerless to avail himself without the intervention of a security), and one which leaves the judgment debtor free to make any disposition of his property he may see fit, certainly neither law nor good morals would permit a security, after having taken upon himself the simple, single obligation of paying the judgment against his principal in case the principal does not pay, to avoid his solemn obligation by the proof of any other fact

than payment (unless in an exceptional case such as would be presented if it should be made to appear that the security was induced to sign the bond by the fraud of the judgment creditor).

2. A contract of suretyship imposes upon the surety the single, simple, and unqualified obligation of paying the amount of the judgment which has been rendered against his principal, in the event his principal does not pay it within the prescribed time. Since the purpose of the stay bond is to relieve the debtor and free his property, the surety upon a stay bond can not claim a release from his obligation because of any lack of diligence on the part of the judgment creditor in not enforcing the fi. fa.; and consequently an affidavit of illegality which sets up that the surety on a stay bond was discharged, because the plaintiff in fi. fa., by dismissing his levy upon certain property of his principal, increased his risk as a surety upon the stay bond, is no obstacle to a levy of the fi. fa. against the surety which issued in conformity with law upon the breach of the stay bond. It is doubtful if there can be any such thing as an increase of the risk of a surety upon a stay bond, since section 6045 provides: "Bond and security being given as provided in the preceding section, the verdict and judgment, or the execution thereon, shall be suspended for the said sixty days, and if the party shall fail to pay the said verdict or judgment within that time, execution shall then issue against such party and his security, without further proceedings thereon." In view of this provision, the judge correctly held that it was immaterial that the judgment creditor had cancelled the record of his former fi. fa., or that there appeared upon the fi. fa. against the original defendant an unexplained levy. The whole purpose of the provisions of section 6044, 6045, and 6046 is to place upon the security upon a stay bond the whole liability theretofore resting upon the defendant in fi. fa., and to suspend all acts of diligence on the part of the judgment creditor in pressing his execution. It is designed to release the property of the defendant in fi. fa. so as to enable him, if he can, to raise the money himself to pay the amount within the sixty days, and thus relieve the security, who otherwise will be bound to pay it. The relief and the proceeding itself are both extraordinary, and it therefore may be safely said that the usual rule whereby a surety may be released in case his risk is increased has no appli-

cation; because the purpose of the sections to which we have referred is to relieve the principal and give him sixty days time, with an opportunity for discharging the obligation, if he can, without the cost and humiliation of a public sale of his goods, and to impose a strict obligation on the surety to pay the amount in case the principal is not able to do so. And to that end section 6045 provides that at the expiration of the sixty days a new execution shall issue both against the original defendant and the security upon the stay bond, "without further proceedings thereon;" and section 6046 provides that "the security paying off such judgment or execution shall have control thereof." Perhaps the fact that it is generally more convenient and attended with less risk for a surety to pay off the fi. fa. in the first instance, and secure himself at the time by a transfer of the fi. fa., explains the seeming lack of adjudications upon the points upon which we have been called to rule, but we are well satisfied that the trial judge correctly held, first, that the surety was estopped to set up the fact that the stay bond was signed "out of season," and also that no defense to the collection of the bond would be available to the surety other than proof that the amount of the bond had been paid.

Judgment affirmed. <em>Broyles, J., not presiding.</em>